## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DAPHNE WILLETT | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| WINCUP, INC. d/b/a NEW WINCUP | ) **JURY DEMAND** |
| HOLDINGS, LLC | ) |
| | ) |
|    Defendant. | ) |
| _____ | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

`**COMES NOW** Plaintiff and respectfully files her first amended complaint as follows:

### Preliminary Statement

1. This action is brought seeking remedies under the provisions of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (hereafter "the ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (hereafter "Title VII") and the Equal Pay Act, 29 U.S.C. § 206.

### Jurisdiction and Venue

2. Jurisdiction of the claims in this Complaint is conferred to this court because it presents federal questions pursuant to 42 U.S.C. § 1981,  28 U.S.C. §§

1311, 1331, 1343(a)(4), Title 29, Section 623 of the Age Discrimination in

Employment Act of 1967, and 29 U.S.C. §§ 621-634

3. Venue is proper in the United States District Court for the Northern District

of Georgia pursuant to 28 U.S.C. § 1391(a) and (b).

## Parties

4. Plaintiff, Daphne Willett (hereafter "Willett") is a resident of the state of

Georgia and resides in the Northern District of Georgia.

5. At all times material hereto, New Wincup Holdings, Inc. (hereafter

"Wincup") was and is a corporation authorized to do business in the State of

Georgia doing business as Wincup, Inc. and has a place of business in and

has been doing business within the Northern District of Georgia specifically

in Stone Mountain, Georgia. Defendant may be served by delivering a copy

of the Complaint to its registered agent for service of process, C T

Corporation System, at 289 S Culver St, Lawrenceville, GA, 30046.

## Procedural Requisites

6. On March 16, 2022, Willett's charge of discrimination against Defendant

was received by the Equal Employment Opportunity Commission

("EEOC").  (See Charge of Discrimination attached as Exhibit 1).

7. Willett received a right to sue letter dated September 9, 2022 and fewer than

ninety days have elapsed since Willett received same.

2

## FACTUAL BACKGROUND

8.  Willett is an African American woman whose date of birth is January 20, 1967.

9.  Willett was hired by Wincup on December 9, 1987, and over the course of thirty-three years performed various functions as part of her employment including warehouse manager, quality control manager, production manager, warehouse supervisor, and supply chain manager.

10. Over the course of her thirty-three-year history with Wincup, Willett continued employment through several corporate buyouts and management realignments due to the quality of the work and value she provided to Wincup.

11. During her thirty-three-year history with Wincup, Willett had consistently good performance reviews and received consistent pay raises as well as monetary bonuses.

12. On December 1, 2021, despite her storied thirty-three-year career with Wincup, Willett was terminated and replaced with a younger employee less qualified than she, Bessy Pena, who Willett herself had trained.

13. On December 1, 2021,  in spite of her storied 33-year career with Wincup, Willett was discriminated against and terminated because she was African American and her age of 54.

14. When Willett was terminated, Wincup alleged that she was not being a team player, turning other team-members against management, and not promoting teamwork which was simply a pre-text for terminating her as she had received an exemplary performance review signed off by her supervisor, Plant Manager, Ron Howard, on February 9, 2021.

15. Unlike other employees, Willett was not provided any evidence to support the allegations nor was she given the typical performance improvement plan afforded other similarly situated employees including Patricia Wilson, a white female, and David Baxter, a white male.

16. In August 2020, Willett was serving as Supply Chain Manager and Production Planner when she was called into a meeting with Ron Howard ("Howard"), her supervisor, Patricia Wilson ("Wilson"), and Reggie Worthy when Ms. Wilson stated the Production Floor is a "shit hole" and Willett was asked to move to the dual role of Production Manager and Production Scheduler over her objections.

17. Willett went to Howard to discuss salary since she was being moved from management of 1 team-member to managing 72 hourly team-members with

4 shift supervisors and 1 assistant Supervisor Hasiba Cavcic.  Willett was told she had to wait 90 days to receive a pay increase after showing improvement in the performance of the people she would supervise.

18.  At the same time,  Wilson, a Caucasian female, moved to acting as both Safety and Quality Control Manager and Compliance/Print Production Manager.  Importantly, Wilson had less experience than Willett having only been on the job since 2017 with no prior manufacturing experience before working for Wincup.

19.  Following the promotions, an email announcement went out extolling the work Wilson had done and that she was being promoted.  Wilson received an immediate salary increase while Willett had to wait 90 days to receive an increase and then only received same two and one-half months after the 90-day period.

20.  David Baxter, a white male,  was the Operational Manager for the Production Floor and Maintenance in August.  Baxter performed poorly and was publicly scolded for poor performance by Howard and was demoted from his position to maintenance only with no salary reduction and continued pay increases.

21.  At least four other African American women were terminated or resigned after being subjected to abuse by Wincup employee Wilson or fabrications

5

she created against them including Bridgett Lee (former HR Manager), Kelly Allen ( former HR Manager), Sarah Gray ( former HR Generalist) and Yakeyta Woodyard ( Former Warehouse worker).

22. In June 2021, Wilson attempted to get Willett in trouble with management when she falsely accused Willett of failing to assist in an SQF audit and falsely claiming that she had to work with the auditor to get points reduced or combined so Wincup could pass.

23. In October 2021, Wilson was promoted to Operations Manager, received immediate compensation not based upon performance and was compensated more than Willett with less experience, less seniority, and no prior manufacturing experience.

24. Wincup allowed a pattern of racist behavior as evidenced by four other African American women either being terminated or resigning due to the conduct of Wilson.

25. Wincup allowed a pattern of racist behavior when in March 2021 David Baxter, a white male, made derogatory statements in a breakroom concerning the Black Lives Matter movement and George Floyd stating, "I can't breathe" in front of Howard without any action taken on his part.

26. In July 2021, Wilson falsely accused HR Manager Kelly Allen, an African American, of threatening her after Kelly Allen witnessed Wilson treat a

white male and black female team member differently in the same situation. Kelly Allen was terminated for the alleged threat.

27. Wilson was instrumental in having an African American employee terminated for allegedly not wearing safety glasses even though she had not violated the current safety glass rule. The current policy did not cover walking in the warehouse only during the operation of a forklift. Daphne Willett was instructed to retrain all warehouse employees with the updated policy after Ms. Woodyard was terminated.

28. When Willett and Production Supervisors reported workplace production maintenance issues causing interruption in line performance to Howard involving Wilson's and Baxter's job responsibilities, both white, Willett was chastised.

29. Wilson falsely accused Willett of abusing FMLA and/or PTO days when she took tenure company earned paid time off to take her legal ward, an elderly lady for whom she was legal guardian, to medical appointments when all absences were approved by Howard and Wilson,

30. On October 4, 2021, Willett met with Tracy Sharpe and Howard requesting that she only have to report to Howard instead of Wilson and return to her previous position due to the stress caused to her by Wilson's conduct.

## <u>COUNT I</u>

**ADEA Violation:  Age Discrimination**

31.  Plaintiff respectfully reincorporates the allegations contained in the above paragraphs as if each were fully set forth herein.

32.  At all times relevant hereto, Defendant was and is an "employer" as defined in the ADEA.

33.  At all times relevant hereto, Plaintiff was an employee as defined in the ADEA.

34.  At all times relevant hereto, Plaintiff was a member of a protected class. Plaintiff was 54 at the time of her termination.

35.  Plaintiff was qualified for her position with Defendant.

36.  Plaintiff was subjected to discrimination based upon her age.

37.  An adverse action was taken against her due to her age and she was replaced with a younger, less experienced employee, Bessy Pena, who she herself had trained.

38.  Defendant's actions complained of above constitute work discrimination practice and caused Plaintiff loss of employment, while incurring expenses, costs, loss of income and attorneys' fees for which Defendant is liable.

39.  Plaintiff suffered adverse employment actions including termination when she was discharged based on pretextual violation of company policy.

40. All jurisdictional prerequisites to the institution of a suit under the ADEA have been fulfilled as follows:

    a. Plaintiffs filed a timely written charge of discrimination with the United States Equal Employment Opportunity Commission.

    b. Plaintiffs received a "Notice of Right to Sue" from the EEOC; and

    c. The Complaint in this action was filed with the Court within 90 days from the receipt of the "Notice of Right to Sue."

## COUNT II

### Title VII Claim: Racial Discrimination

41. Plaintiff respectfully reincorporates the allegations contained in the above paragraphs as if each were fully set forth herein.

42. At all times relevant hereto, Defendant was and is an "employer" as defined in Title VII.

43. At all times relevant hereto, Plaintiff was an employee as defined in Title VII.

44. At all times relevant hereto, Plaintiff was a member of a protected class, African American.

45. Plaintiff was qualified for her position with Defendant.

46. Plaintiff was subjected to discrimination based upon her race.

47. All jurisdictional prerequisites to the institution of a suit under Title VII have been fulfilled as follows:

    a. Plaintiffs filed a timely written charge of discrimination with the United States Equal Employment Opportunity Commission.

    b. Plaintiffs received a "Notice of Right to Sue" from the EEOC; and

    c. The Complaint in this action was filed with the Court within 90 days from the receipt of the "Notice of Right to Sue."

48. Wincup maintained an employment policy and practice such that its white employees received favorable treatment compared to their African American's counterparts.

49. Wincup paid Wilson, a white employee, immediately upon her promotion but required Willett to wait 90 days based upon the production of the persons she supervised.  Even then, she had to wait additional time to receive the raise.

50. Wincup demoted David Baxter, a white male, but did not decrease his pay. When Willett asked for her old job and a voluntary demotion, her pay was decreased.

51. David Baxter was counseled on several occasions for poor performance and made racist remarks on one occasion and was never disciplined or received a reduction in pay nor was he terminated.  In contrast, Willett was never

disciplined and was terminated without counseling and without an

opportunity to correct any alleged deficiencies in her performance.

52. As set forth above, Wilson made false allegations against Willett to make

her job difficult and to portray her as an unapprochable and an aggressive

employee.  Wilson's conduct was consistent with how she treated other

black employees four of whom either were terminated or resigned because

of her conduct.

53. Defendant's actions complained of above constitute work discrimination

practices and caused Plaintiff loss of employment, while incurring loss of

income, expenses, costs, and attorneys' fees for which Defendant is liable.

## COUNT III

### Hostile Work Environment

54. Plaintiff respectfully reincorporates the allegations contained in the above

paragraphs as if each were fully set forth herein.

55. Plaintiff belongs to a protected group, African-American.

56. As set forth above, she has been subject to unwelcome harassment including

false allegations and attempts to discredit Willett's work performance.

57. Said conduct was based on Willett being an African-American.

58. Wincup's conduct as set forth above created a hostile and abusive work

environment.

59. Willett made known her complaints to Howard, her step-up supervisor and even asked for a demotion and a different Manager than Wilson to avoid the abuse but it continued.

## COUNT IV

## EQUAL PAY ACT

60. Plaintiff respectfully reincorporates the allegations contained in the above paragraphs as if each were fully set forth herein.

61. David Baxter, a white male, held a job with similar skill requirements, experience, ability, education, training as Plaintiff  when he worked as Operational Manager for the Production Floor and Maintenance.  He was demoted and continued receiving his same pay.  Plaintiff voluntarily took a demotion and her pay was decreased.

62. Patricia Wilson, a white female, was given a promotion with job titles that required similar skill requirements, experience, ability, education, training as Plaintiff without having same and immediately received a pay raise while Plaintiff was promoted and had to wait more than 90 days to receive a pay raise after showing improved performance in the employees she would supervise.

63. As a result of Defendant's discrimination and unequal pay, Plaintiff is entitled to damages in the amount she was underpaid, liquidated damages

equal to 100% of the underpaid wages and reasonable attorneys' fees and costs.

## COUNT V

### Punitive Damages

64. Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

65. Defendant's conduct in terminating Plaintiff because of her race and age were done with "malice or with reckless indifference to the federally protected rights" of the Plaintiff in violation of Civil Rights Act of 1991 (Pub.L. 102-166, codified as 42 U.S.C. § 1981A) sufficient to justify an award of punitive damages as contemplated by said statute for claims brought under Title VII and 42 U.S.C. § 1981.

**WHEREFORE,** Plaintiff respectfully prays for judgment against the Defendant as follows:

(a) Defendant be permanently enjoined from discriminating against Plaintiff on any basis forbidden by Title VII;

(b) Defendant be ordered to compensate, reimburse, and make whole the Plaintiff for all the benefits, past and future, she would have received had it not been for Defendant's illegal actions, including but not limited to back pay, benefits, bonuses, raises, and training, including

13

all relief available under 29 U.S.C. § 1001 *et seq.* Plaintiff should be accorded these benefits which were illegally withheld from the date of her termination until the date she is tendered substantially equivalent employment, with interest on the above withheld amounts to the date of payment;

(c)   An award of compensatory damages in an amount to be determined by the jury;

(d)   An award of punitive damages to Plaintiff to deter future wrongdoing by the  Defendant;

(e)   That Plaintiff recover her reasonable attorneys' fees including litigation expenses and costs;

(f)   Such other relief as the Court deems proper and just.

## **Jury Demand**

Plaintiff demands trial by jury of twelve persons for all issues in this action.

This  21st  day of November, 2022.

Respectfully submitted,

/s/Jonathan P. Sexton
Jonathan P. Sexton
Georgia Bar No.  636486

**SEXTON LAW FIRM, LLP**
124 Atlanta Street
McDonough, GA 30253
(770)-474-9335 phone
(866)-529-0828 fax
jsexton@sextonlawfirm.com